Good morning, Your Honors. May it please the Court. I'm John Harding, representing the appellant. In this case, Andrew Ian Douglass. I'd also like to introduce to my immediate right is Joseph Milstein, who is co-counsel and also was the counsel for Mr. Douglass in connection with the proceedings before the PTO and the PTAB. And next to Mr. Milstein is Mr. Douglass. I think it's important at the outset to make sure that the Court understands this invention and to give you a very real-world example. During this invention that Mr. Douglass created and filed way back in the year 2000, during the time we're having this conversation, it would permit any one of you to actually obtain a final binding insurance policy for your home that you could hold in your hand and that is effective immediately. And you would accomplish that in a single session, interacting directly with the insurance company in a single session via the computer. The government raises Alice. How do you deal with that? Yes, I'd be happy to deal with that in several ways because we think, in fact, Alice is helpful to our position. First, I'd like to note that certainly there was no finding by the Board in the proceedings that the subject matter of Mr. Douglass' patent application was not a patentable concept under Section 101. The Alice case starts with the proposition that you were dealing with an abstract proposition or abstract concept that is not patentable. It's not eligible for a patent. And you would agree, I would assume, that the idea of obtaining insurance is not a patentable concept. Yes, I would. And that is not... And so your invention as obtaining insurance through a computer, isn't that explicitly, I mean, exactly what Alice did is patentable. No, it's not at all. I mean, let me just make it clear that if you've got simply an abstract concept and you say, do it on a computer, that doesn't get you anywhere. So if your invention is E equals MC squared and you then say, do that on a computer, that gets you nowhere. The concept here is actually delivering a tangible product. It is not an abstract concept. Well, I mean, that seems quibbling. If I go into an insurance office and the agent is authorized to issue a policy on the spot, I go in, they issue me my policy, I walk out. Are you saying that's a patentable concept because the insurance policy is issued on the spot? No, we are not. We're saying... So issuing it on the spot on a computer is patentable. First of all, if you go to an agent, you are not dealing with the insurance company by definition. Well, so I go to the insurance company. I go to the insurance company... It doesn't exist in the real world. Well, let's assume it does. I mean, it might. I mean... Right, but that's not the record we have here. Is that a patentable... Well, it doesn't matter. I'm asking you a hypothetical. Is that a patentable concept? If I walk into my insurance office and say, I want an insurance policy for my house, and they say, what kind of coverage you want? I sign it all, I give them my credit card, and they say, here's your policy. Is that a patentable concept? That's not defining the process, and what I want to make clear is we are not claiming... No, you didn't answer my question. If that's... I was trying to... Do we get in person a patentable concept? Is the concept of going in person and filling out an application... In getting the insurance policy? No. So the notion of getting an insurance policy on the spot is not patentable? That I would agree with, but... But your idea, then, of getting the insurance policy on the spot through the computer is patentable. It's not through the computer. What's critical here is that you are... That it is a process developed to have a direct interaction with an insurer in a single session in real time. Yes, is it done via a computer? Is that the means by which information is transmitted? And if you look at claims 39 and 40, which are the heart of the claims, is that you do it, yes, using a computerized tool, but you are in direct communication with the insurer. The insurer makes a decision, and if... I thought you just said that if I did it in person, and the insurer made an immediate decision and gave me a policy... If you walked out with a policy, I don't think that would be a patentable... That's not a patentable process. I mean, I can write a patent that says, this is a patent for getting an insurance policy. One, go to the insurance office. Two, talk to the insurance agent. Three, give them money. Four, get the signed insurance policy. That's a process. It doesn't sound like a patentable process, but it's a process. Right, but if that's done... Your patent seems to have all those steps done through a computer. It uses a computer-mediated session as the result. Absolutely. There's no question about that. But to get back to your question on Alice, Alice makes it clear and reiterates in numerous occasions that if you have an abstract concept, and we don't agree that getting a tangible policy, which if you did it right now while we're talking, and at the conclusion of this hearing, you in your inbox had a policy of insurance, and then one hour later, your house burns down, you're covered. That didn't exist anywhere in the real world before this concept. You've spoken several times about getting something tangible. Yes. A, what do you mean, and B... I mean... I got to finish my question. I'm sorry, Your Honor. That's why I started with A. A, what do you mean, and B, where is that requirement in the claims? Okay, first of all, it's physical because you're going to get not a, what the other prior that was referred to cites, some indefinite commitment or representation, and in the future you might get a policy. You get your full complete policy of insurance at the time. I honestly don't know if this makes any difference, but if what you got was an acknowledgment, a sentence sent to you, and let's assume the electronic representation is tangible. You have a sentence that says, we State Farm hereby formally execute the policy of insurance to cover whatever, whatever it is. The 30-page brochure, actual policy with 120 clauses in it will follow. Mm-hmm. Is that, is the one-sentence acknowledgment what you mean by a tangible policy in hand? No, I mean the 30-page document with all the terms and conditions. So assuming that's what you, that's what they have patent doesn't cover the situation where the only thing you get during the interaction is the formal contractual agreement whose content is to be supplied to you later? Well, if it's formal environment, I mean the way it's phrased. The word you want is binding, a binder. Yes. A binder in the insurance world is completely different. A binder is a representation that, that in the future, you are covered. Not that you're covered at this exact moment in time, have in effect immediately, now a full and complete policy of insurance. You know what I've heard, I certainly over the years have had lots of experience where I call my insurance agent and say I need a policy on this, and at the end of the conversation he says you're covered. I say as of when? He says 10 days later I get something in the mail. Right. I mean I think ours is that, how does that situation, taking out the computer part of it, fit with with your claims? Well, I think our claim and the way it's phrased is that at the end of the communication session, you have a communication that comprises a policy of communication itself, if you're approved. I beg your pardon? If, this all assumes that the applicant... No, no, when the judge is talking, you don't talk. You listen. Okay. If I represent an insured who obtained the statement I represent Judge Toronto, he called his agent, the agency said you're covered from now. Is not the insurance company bound by that agent as of that moment? I think that's our couch on insurance law, volume one. Well, it depends on who, when you use agent, there are agents who are deemed to be agents for the policyholder and ones that are deemed to be agents of the insurance company, and there's actually a lot of case law if it's an independent agent, what the scope of their authority is, but certainly if an agent... Assuming they have the authority to bind the insurance company, that verbal commitment on the phone that you're covered and you qualify as of immediately is sufficient to bind the insurance company and you're covered. If you have a policy, you may not have it in hand, but you've agreed to certain terms. You've agreed to certain coverage. That could be, I mean, it's hard for me to answer. Well, I mean, how could you otherwise have coverage if you haven't talked about what terms you want on the phone? So here's the question. Okay. It seems to me that you are trying to distinguish that from your invention, but I'm not sure that your invention goes further and says not only do you get a commitment immediately effective to insurance coverage, but you get the full insurance policy with all the clauses and all the boilerplate and stuff like that. Is that what your position is? Yes. Well, where in the claims does that say it? Because I don't see it. It's in 39 and 40. It says the communication- So it's not in 19. It's not in any of the claims prior to 39 or 40. Correct. It's 39- So if that's the patentable part, then your 19 and all those claims before that don't include that. They don't include that. So they're probably obvious. I don't agree with that, but to the extent that there was any difference in the language and in our brief- I don't agree. If that's the reading of the prior art, however, the prior art- I know. We don't agree with that reading of the prior art, but if you do. So what we're talking about is you think, I guess in subclause E of 39, that that last part is what distinguishes it because you actually get a written document as opposed to just an oral commitment that you're covered and here are the terms. Yes, Your Honor, and directly because you're interacting directly with the insurer. You're not using a broker or agent. You're interacting directly with the insurer and all this other stuff, too. In all of our hypotheticals, you're interacting directly with somebody that can bind the insurer. Are you saying it makes a difference that you're interacting with the insurer or you're interacting with an agent for an insurer that can bind them? Yes, because- Why? Because an agent, I don't think an agent could look at your application and without communicating with the insurance company, just issue a policy. They do it all the time. You've got less than two minutes left. Do you want to reserve it or keep going? I will, unless you have any other specific questions at this time. The one thing I do want to point out is that the government's case on this is based on the insurer reference and certainly a very significant issue that we've raised is the fact that, apart from the fact that we think the insurer references don't apply here because they're dealing with a system for getting quotes, getting preliminary information. They are not for timely rebuttal evidence that made it crystal clear that any reference in Intuit to providing any kind of commitment, binder, anything else for a policy was not in real time, was not to be effective at the time of the session and the government simply ignored that rebuttal evidence in contravention of the PASECI case, in contravention of their own manual for patent examination procedures. We've brought it to their attention and we've cited in our brief the multiple times where we called this specific information to their attention and under the case law and under their own procedures, they were obligated to throw out the old decision to start over and to consider it and they never once even mention it, that they gave any consideration to it, much less follow the procedure that they were obligated to do. Thank you. May I please, the court, I'm happy to start wherever the court would desire, but... Could you address that part of Claim 39 where it talks about actually providing the language because that seems to me the only thing that isn't pretty clearly covered by the prior arts. That's correct, Your Honor. So in Claim 39 and Claim 40, the argument that is made by Mr. Douglas is that the policy is delivered and it's live immediately and that's the distinction from the prior art. But in the claim language, the only thing that it says is that it delivers a policy. In other portions of their brief, they argue that policies can be effective at other times. These are confessions that they've made. The policy does not necessarily need to be live immediately. And so certainly we believe that those are positions that those claims, 39 and 40, do not require the delivery of a policy that is active immediately. And so the distinction that they've raised just doesn't apply to those claims. And that's different just as we were discussing earlier, different from the remainder of the claims, which only requires a communication, doesn't actually require the delivery of a policy. So we don't think that the distinction that they're making for either of those sets of claims actually applies to the claim language. So the claim language in this case is quite broad. And because of the breadth, it does sweep in the prior art, which includes the insurer market system. And I think the insurer market system is actually quite close to what they're claiming. It seems to have all the elements that are required. It sells insurance over the internet. The customer comes onto the site, gets real-time quotes, and then fills out credit card information and appears at the end, including information for a binder payment. And then at the end of the session, they have at least purchased some sort of coverage. And that seems to be, render obvious claims 39 and 40. So that's our position in this case. So you put the 101 section in our brief. Do you have any authority that we could actually rely on 101 as a ground to affirm? It seems like in an appeal from the PTAB that we can only affirm based upon the grounds raised in the administrative decision. So to address that, let me just take a step back and say that we put that section in there for two reasons. One is that there is some authority for the court. That's a Comiskey case. There is some issue that was not raised on the appeal. And so we have in the past experienced interest from judges in cases where it may be particularly clear that the invention falls outside the scope of what is allowed by 101. And so we put that in there perhaps selfishly for our own self-preservation. The second reason why we put in there is because we'd like to notify the applicant of a problem that we think may, even if they prevail, and we think our 103 and 112 paragraph one rejections are sound, even if they prevail on those rejections, there's a substantial problem with the claims. And reading the written description of the application, there may be a substantial problem with any claims that emerge from this application. And so we put that in there just to give a little notice of a problem that we see going forward with this application. Those are the two reasons. And as I said, we believe the 103 rejection is quite good in this case. And we believe the written description rejection is also quite good because there's nothing in the application that discusses the delivery of an immediately active policy or a communication that the policy is immediately active. And so as a result, you can't narrow your claim to avoid what is very good prior art. That's our position for the 112. Just a few quick points. There's an argument that this is not analogous art. It's hard to imagine a more analogous piece of art. It is selling insurance on the internet. The claim is to selling insurance on the internet. The difference, whatever the perceived there is in the entity selling, that does not make this non-analogous art under this court's law. And then I wanted to just make, let me just check my list really quickly. I wanted to make one other point, which is that there is some confusion, I think, here between anticipation and obviousness. The reason why not every element is in the one reference is because it's an obvious rejection. If every element was in there, it would be anticipation rejection. But as I said, I think it's a very strong 103 rejection. If there are no further questions, I'm happy to yield back. We'd just like to make a couple of points on rebuttal. How fast? They're going to be very fast. One, on the insurer reference, the rebuttal evidence is clear. The statement we rely on says that if you do that process, the earliest you can have coverage is 12 or 1 a.m. on the next business day. So if you did it today, you'd get your coverage bound in any form on Monday. If Monday's Tuesday, that is not in real time. And that was the heart of the rebuttal evidence that was never considered, which is dispositive, that what we're talking about and what our process is, is a real-time transaction effective immediately. And then just secondly, on Alice, the PTO, in fact, promulgated regulations in the CFR on December 16th of last year, which exactly say, interpreting Alice, that a patent would cover a transaction between, excuse me, that if you're talking about making a useful new improvement to something that might otherwise be considered abstract, that that is how the PTO itself defines Alice and its limitations. And that's adding a specific limitation down.